Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 4074 | **DATE** | 7/1/2004 |
| **CASE TITLE** | Sa'Buttar Health & Medical, P.C. vs. Tap Pharmaceuticals, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons stated in the Memorandum Opinion and Order, defendant's motion to dismiss [#18] is granted. First amended complaint and case dismissed with prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 number of notices | **Document Number** |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | JUL 2 - 2004 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | 21 |
| ✓ | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | 7/1/2004 date mailed notice | |
| MD | courtroom deputy's initials | Date/time received in central Clerk's Office | MD mailing deputy initials | |

DOCKETED

JUL 2 - 2004

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SA'BUTTAR HEALTH & MEDICAL, P.C., )
a North Carolina Corporation, )
)
Plaintiff, )
)
vs. ) No. 03 C 4074
) Judge Joan H. Lefkow
TAP PHARMACEUTICALS, INC., )
a Delaware corporation, )
)
Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Sa'Buttar Health & Medical, P.C. ("Clinic"), brings this action against TAP Pharmaceuticals, Inc. ("TAP"), pursuant to 28 U.S.C. § 1332,[1] alleging in Count I that TAP breached its contract with the Clinic when TAP refused to fill an order for the drug Lupron. In Count II, the Clinic alleges that it was fraudulently induced to enter into a contract when TAP falsely represented that it would provide a constant supply of Lupron to the Clinic. In Count III, the Clinic contends repeated assurances by TAP that an order of Lupron was temporarily delayed, when in fact it was never shipped, constitutes fraud and deceit. Before the court is TAP's motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss Count I and under Federal Rules of Civil Procedure 9(b) and 12(b)(6) to dismiss Counts II and III. For the reasons set forth below, the motion is granted.

---

[1] The First Amended Complaint identifies the Clinic as a North Carolina corporation with its principal place of business in North Carolina and TAP as a Delaware corporation with its principal place of business in Abbott Park, Illinois.

2 1

# MOTION TO DISMISS STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *Gen. Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). Dismissal is appropriate only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief. *Conley* v. *Gibson*, 355 U.S. 41, 45-46 (1957); *Kennedy* v. *Nat'l Juvenile Det. Ass'n*, 187 F.3d 690, 695 (7th Cir. 1999). In ruling on the motion, the court accepts as true all well pleaded facts alleged in the complaint, and it draws all reasonable inferences from those facts in favor of the plaintiff. *Jackson* v. *E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir. 1999); *Zemke* v. *City of Chicago*, 100 F.3d 511, 513 (7th Cir. 1996).

In addition to the mandates of Rule 12(b)(6), Federal Rule of Civil Procedure 9(b) requires "all averments of fraud" to be "stated with particularity," although "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." "The rule requires the plaintiff to state the identity of the person who made the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Vicom, Inc.* v. *Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994); *see also DiLeo* v. *Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) ("Although states of mind may be pleaded generally [under Rule 9(b)], the 'circumstances' must be pleaded in detail. This means the who, what, when, where, and how: the first paragraph of any newspaper story.").

## ALLEGATIONS OF THE COMPLAINT

According to the Clinic's First Amended Complaint ("Complaint"), in November 1998, Al Woods, a sales representative of TAP, told Dr. Buttar, President of the Clinic, that TAP would provide the Clinic with a constant supply of Lupron, a drug used in the treatment of cancer. Based on this statement, the Clinic entered into an agreement with TAP whereby TAP would supply the Clinic's requirements for the drug. After a few orders had been placed by the Clinic and filled by TAP, Al Woods informed Dr. Buttar the Clinic soon would be eligible for free samples of Lupron. Al Woods suggested the Clinic use the free samples for Medicare patients but submit claims for reimbursement to Medicare even though the Clinic had not paid for them. He further suggested a selling price for the drug to the Clinic's patients that would be consistent with the prices of other physicians.

The Clinic rejected these suggestions because Dr. Buttar believed they would work a fraud on Medicare and the Clinic's patients. Then, on May 24, 1999, the Clinic placed an order for Lupron with TAP but the order was not shipped. Several months passed, during which time the Clinic was told on several occasions that the medication was sure to arrive soon, but it never came. As a result, the Clinic lost clientele, reputation, and revenue due to its inability to provide Lupron to its patients.

## DISCUSSION

In support of its motion to dismiss Count I, for breach of contract, TAP argues, (1) it did not breach the contract because it never accepted the Clinic's May 24, 1999 order, (2) the Clinic fails to allege breach of a written contract and therefore is barred by the Statute of Frauds, and (3) the contract contains a merger clause, making any previous oral agreement between Al

Woods and the Clinic void. As for Count II, fraudulent inducement, and Count III, fraud and deceit, TAP argues (4) the Clinic fails to plead facts sufficient to establish a scheme to defraud and (5) the Clinic fails to plead facts with sufficient particularity as required by Federal Rule of Civil Procedure 9(b). Because the court dismisses Count I based on (1) above and Counts II and III based on (4) above, it does not address the other grounds.

## A. Breach of Contract

Count I alleges that TAP's failure to fill and deliver an order of Lupron placed by the Clinic on May 24, 1999, constitutes a material breach of TAP's contractual duties. Typically, under Rule 12(b)(6) the court is limited to the four corners of the complaint when determining whether a plaintiff has adequately pled a claim upon which relief may be granted. *Rosenblum* v. *Travelbyus.com Ltd.,* 299 F.3d 657, 661 (7th Cir. 2002). A narrow exception, however, allows a court to consider a document attached to a motion to dismiss without having to turn the motion into one for summary judgment, so long as that document is central to the plaintiff's complaint. *Wright* v. *Associated Ins. Cos., Inc.,* 29 F.3d 1244, 1248 (7th Cir. 1994).

In this case, the contract underlying Count I is central to the Clinic's breach of contract claim, and TAP has attached to its motion to dismiss a copy of a written agreement between it and the Clinic. TAP specifically relies on the standard terms of the contract, which indicate each order received by TAP is subject to its acceptance, either in writing or by performance, arguing that the Clinic fails to allege in its Complaint that the May 24, 1999 order was ever accepted by TAP, as would be required for TAP to have a contractual duty to subsequently fill the order.

Instead, the Clinic claims the contract attached by TAP to its motion to dismiss is not the contract referred to in its Complaint, but "a different agreement." The Clinic does not provide

4

any alternative contract in support of its position, although the court infers that it refers to the oral agreement between Buttar and Woods.[2] Rather, it claims the sole issue under Rule 12(b)(6) is whether the Clinic has adequately alleged a breach of contract action against TAP.

The court disagrees. The policy of the exception, to allow a court to consider documents outside the four corners of the complaint, is to prevent a plaintiff from evading dismissal under Rule 12(b)(6) simply by failing to attach a contract that proves his claim has no merit. *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002). In this case, that appears to be what the Clinic is trying to accomplish by alleging an oral agreement that preceded the execution of the written document TAP provides.

Moreover, the court is not bound by the plaintiff's allegations as to the effect of the attached contract but can independently examine the contract and form its own conclusions. *Rosenblum*, 299 F.3d at 661. Here, the Clinic claims the contract attached by TAP is unauthenticated but does not suggest that the document is inauthentic. *See Black v. Rodriguez*, No. 01 C 1721, 2002 WL 31045390, at *1 n.4 (N.D. Ill. Sept. 11, 2002) (citing *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994) (on summary judgment[3] evidence

---

[2]The Clinic appears to argue that an oral contract existed through which TAP would be held liable. As TAP points out, however, any oral contract would be subject to Illinois' statute of frauds, 810 ILCS 5/2-201, which provides, with exceptions not applicable here, that "a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker...." Inasmuch as the Clinic has not suggested why this law would be inapplicable, if the Clinic means to rely on an oral contract, its claim must be dismissed on this ground. *E.g., Berco Investments, Inc. v. Earle M. Jorgensen Co.*, No. 94 C 3961, 1996 WL 388463, at *3 (N.D. Ill. July 8, 1996) (affirmative defense of statute of frauds may be raised on Rule 12(b)(6) motion when affirmative defense is apparent from the face of the complaint); *see also, Casazza v. Kiser*, 313 F.3d 414, 420 (8th Cir. 2002) (granting motion to dismiss breach of contract claim based on statute of frauds and noting that "statements that a writing sufficient to satisfy the statute of frauds *may* exist is not enough to defeat [defendant's] motion to dismiss.") (emphasis in original).

[3]By considering the evidence outside the pleadings, the court is to that extent proceeding as if on summary judgment.

need only be admissible in substance not form). The contract provided by TAP is signed and dated by Dr. Buttar, President of the Clinic, and the May 24, 1999 order falls within the effective dates of the contract. Unless the Clinic has good faith grounds to dispute its authenticity, the court may consider it.

Therefore, because the Clinic fails to provide a contract in support of its position and because it fails to allege its May 24, 1999 order was ever accepted by TAP, the Clinic's claim for breach of contract is dismissed.

**B.  Fraud Claims**

In Count II of its Complaint, the Clinic contends it was fraudulently induced by TAP to enter into a contract for the supply of Lupron, in part, because TAP assured the Clinic a constant supply of Lupron would be provided. Under Illinois law, claims of fraudulent inducement are treated as common law fraud. *Zic* v. *Italian Government Travel Office*, 130 F. Supp. 2d 991, 995 (N.D. Ill. 2001). The elements of common law fraud include: (1) a false statement of material fact, (2) defendant's knowledge that the statement was false, (3) defendant's intent that the statement induce the plaintiff, (4) plaintiff's reliance upon the truth of the statement and (5) plaintiff's damages resulting from reliance on the statement. *Connick* v. *Suzuki Motor Co.*, 174 Ill. 2d 482, 496, 675 N.E. 2d 584, 591 (1996).

According to the Clinic's Complaint, the false statement at issue is TAP's promise to provide the Clinic with a constant supply of Lupron. In Illinois, fraud based on a false representation of intent to perform a promise or some future conduct is called "promissory fraud." *Doherty* v. *Kahn*, 289 Ill. App. 3d 544, 562, 682 N.E. 2d 163, 176 (1997). Generally, promissory fraud is not actionable in Illinois unless the promise or representation of intention of

future conduct is the scheme or device used to accomplish the fraud. *Id.* This exception applies when a party makes a promise without intending to keep the promise, but intending for another party to rely on it and the other party does rely on the promise to his detriment. *Brdecka v. Gleaner Life Ins. Society*, No. 02 C 3076, 2002 WL 1949743, at *3 (N.D. Ill. Aug. 23, 2002). In this case, the Clinic claims that it relied on TAP's promise to its detriment because the Clinic lost clientele, reputation, and revenue when TAP cut-off its supply of Lupron.

Promissory fraud, however, is a disfavored cause of action in Illinois because it is easy to allege and difficult to prove or disprove. *Bower v. Jones*, 978 F.2d 1004, 1012 (N.D. Ill. 1992). Thus, the burden on a plaintiff claiming promissory fraud is deliberately high. *Id.* To survive a motion to dismiss, a plaintiff must be able to point to specific, objective manifestations of *fraudulent intent* – a scheme or device. *Hollymatic Corp. v. Holly Systems, Inc.*, 620 F. Supp. 1366, 1369 (N.D. Ill. 1985) (emphasis added).

In the instant case, the Clinic fails to provide any indication of fraudulent intent on the part of TAP. Initial compliance with a promise is contrary to the existence of fraudulent intent. *Stunfence, Inc. v. Gallagher Security, Inc.*, No. 01 C 9627, 2002 WL 31109456, at *2 (N.D. Ill. Sept. 20, 2002). In the Clinic's Complaint, it admits that TAP received and filled multiple orders for the Clinic before refusing to fill the May 24, 1999 order. TAP's initial compliance with its promise is an indication that there was no fraudulent intent on the part of TAP to induce the Clinic to purchase Lupron.

The Clinic contends TAP initially complied with its promise because it had not yet approached the Clinic about participating in TAP's scheme to defraud Medicare and the Clinic's patients. The Clinic claims that TAP had no intention of supplying Lupron to the Clinic if it

7

refused to participate in TAP's scheme. However, promissory fraud requires a showing that the promisor did not intend to keep the promise *at the time the promise was made*. *E.g., Brusilovsky v. Figgie Int'l,* No. 94 C 1506, 1995 WL 330809, at *6 (N.D. Ill. May 30, 1995) (emphasis added). Under the circumstances alleged by the Clinic, TAP could not have known whether it would or would not keep its promise when the promise was made back in November, 1998.

Moreover, there could be no fraudulent intent on the part of TAP because the Clinic voluntarily entered into a contract for the supply of Lupron and that contract was not a requirements contract. If TAP's promise to provide the Clinic with a constant supply of Lupron was the false statement that induced the Clinic into switching from a competitor's drug to Lupron, the terms of the contract put the Clinic on notice that TAP could stop shipments of Lupron at anytime. While it is unfortunate that the Clinic suffered a loss because TAP refused to continue to provide the Clinic with Lupron, the broken promise alone does not support an inference of fraudulent intent on the part of TAP.

Still, the Clinic alleges that TAP's fraudulent intent is evident from the close proximity between TAP's initial promise in November, 1998 and the breach of that promise in May, 1999. Indeed, a court may infer fraudulent intent where the breach of promise occurs so close to the promise that the only possible inference is that the promisor never intended to keep the promise. *Zic,* 130 F. Supp. 2d at 995-96. On the facts of this case, the passage of several months between the promise and the breach is too long to support an inference that TAP never intended to keep its promise. *Cf. id.* at 996 (one year too long to support an inference of fraudulent intent); *Razdan v. General Motors Corp.,* 979 F. Supp. 755, 759 (N.D. Ill. 1997) ("several months" too long).

8

If a plaintiff cannot establish specific, objective manifestations of fraudulent intent, then it is presumed that he cannot prove facts at trial entitling him to relief. *Hollymatic*, 620 F. Supp. at 1369. Therefore, given TAP's initial compliance with its promise, the Clinic's failure to plead facts showing that TAP did not intend to keep its promise at the time the promise was made, and the amount of time between the promise and the alleged breach, dismissal of the Clinic's promissory fraud claim in Count II is proper.

In Count III of the Complaint, the Clinic contends TAP's assurances that the May 24, 1999 order of Lupron was delayed, when in fact it was never shipped, constitutes fraud. The Clinic argues that TAP did not seek dismissal of this claim in its motion to dismiss, but it was covered under TAP's argument that the Clinic's Complaint is merely seeking recovery for promissory fraud. Indeed, Count III is dismissed for the same reasons as Count II. There is nothing pled in this Count suggesting that TAP, when it made representations that the shipment of Lupron was delayed, intended instead not to ship the supply of Lupron. Count III of the Complaint, therefore, is also dismissed.

The Clinic was previously given an opportunity to amend its Complaint after TAP had filed a motion to dismiss. Since this is its second bite at the apple, it is clear that the Clinic is not adequately able to state a claim. Accordingly, the dismissal of the Clinic's Complaint shall be with prejudice.

## CONCLUSION

For the reasons stated above, TAP's motion to dismiss all counts is granted [#18]. The Clinic's First Amended Complaint is dismissed with prejudice. This case is terminated.

Enter: /s/ Joan H. Lefkow
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: July 1, 2004